Honorable Cyndi KRIER, Roy Barrera, Jr., Gerry Rickhoff, Rudy A. Garza and Leo Pacheco in their Official Capacities, and Bexar County, Appellants,

v.

Eduardo D. NAVARRO, Appellee.

No. 04–96–00485–CV.

Court of Appeals of Texas, San Antonio.

July 2, 1997.

Rehearing Overruled Sept. 10, 1997.

Leslie J.A. Sachanowicz, Jennifer S. Badger, Magda L. DeSalme, Assistant Criminal District Attorney, Civil Section, San Antonio, for appellant.

Mayo J. Galindo, San Antonio, for appellee.

Before STONE, GREEN and DUNCAN, JJ.

STONE, Justice.

This appeal presents the issue of whether an elections administrator appointed pursuant to section 31.032 of the Texas Election Code is a public officer or a public employee. Eduardo Navarro, the former Bexar County elections administrator, claims he served in that capacity as an employee and that he could be terminated only for cause within the statutory framework detailed in the Texas Election Code. Appellants, Bexar County and the individual members of the Bexar County Elections Commission, claim Navarro served as a public officer within the meaning of article XVI, section 30(a) of the Texas Constitution, which limits public officers' employment to renewable two-year terms. For the reasons stated herein, we hold that an elections administrator is an employee.

### PROCEDURAL AND FACTUAL BACKGROUND

Eduardo Navarro was appointed Bexar County elections administrator on September 8, 1993. On December 1, 1995, the Bexar County Elections Commission unsuccessfully attempted to remove Navarro from this position. Proceeding under section 31.037 of the Election Code, which provides for dismissal of the elections administrator for good cause by four-fifths vote, the Commission lacked the necessary votes for removal. The Commission then voted to accept an opinion from the Bexar County District Attorney stating that an elections administrator is a public officer within the meaning of article XVI, section 30(a) of the Texas Constitution, and is limited to a two-year term. Since Navarro had already served two years and a majority of the Commission did not want to renew his term, the Commission declared the office vacant and passed a motion to advertise and solicit applicants for the position of elections administrator.

On December 6, 1995, Navarro filed suit against Bexar County and the individual members of the Elections Commission (collectively "the county") to enjoin his removal

and obtain a declaratory judgment to determine whether an elections administrator is a public official and thus subject to the constitutionally-mandated term limit. The trial court ruled that an elections administrator is an employee rather than a public official, and permanently enjoined the county from removing Navarro unless (1) at least four members of the Elections Commission voted to dismiss Navarro for good cause pursuant to section 31.037 of the Election Code, or (2) Commissioners Court abolished the position of elections administrator. The trial court also awarded Navarro attorney's fees.

On appeal, the county challenges the trial court's jurisdiction, the court's characterization of an election administrator as an employee rather than a public officer, and the attorney's fees award.[1]

### JURISDICTION

#### A. Presentment

The county contends the trial court lacked jurisdiction because Navarro did not present his claim to Commissioners Court before he filed suit, which the county asserts is a jurisdictional requirement imposed by the Local Government Code. The county also claims the trial court lacked jurisdiction because no justiciable controversy existed. Thus, the county claims the court erred in failing to dismiss the case and in granting Navarro's injunction. We reject both contentions.

■ Section 81.041 of the Local Government Code provides:

(a) A person may not sue on a claim against a county unless the person has presented the claim to the commissioners court and the commissioners court has neglected or refused to pay all or part of the claim.

(b) If the plaintiff in a suit against a county does not recover more than the commissioners court offered to pay on presentation of the claim, the plaintiff shall pay the costs of the suit.

TEX. LOC. GOV'T CODE ANN. § 81.041 (Vernon 1988). It is undisputed that Navarro did not present his claim to Commissioners Court before filing his suit. This omission, however, has no bearing upon the trial court's jurisdiction.

■ By its very terms, section 81.041 controls when the suit involves a claim in which the plaintiff seeks payment of money from a county. The statute refers to claims that the county has "neglected or refused *to pay*," and provides for payment of costs of suit depending on how much the county "offered *to pay*" on a claim. *Id.* (emphasis added). In short, the statute applies to suits against a county seeking money damages, and thus was not triggered when Navarro sought declaratory and injunctive relief. *See Dallam County v. S.H. Supply Co.,* 176 S.W. 798, 804 (Tex.Civ.App.—Galveston 1915, writ ref'd) (holding under predecessor statute that plaintiff not required to present claim to Commissioners Court in suit to bind county to title); *Comanche County v. Burks,* 166 S.W. 470, 474 (Tex.Civ.App.—Fort Worth 1914, writ ref'd) (holding under predecessor statute that action to enforce trust requiring county to hold school lands and proceeds from lands in trust for public schools did not seek recovery of a debt or damages and did not require presentment of claim before suit is filed). Since Navarro did not present a monetary demand, he was not bound by the provisions of section 81.041.

#### B. Justiciable Controversy

■ Alternatively, the county argues the trial court lacked jurisdiction because no justiciable controversy existed. The county claims that there must be an arguable violation of the statute for a genuine controversy concerning the construction or validity of a statute to exist. *See Laborers' Int'l Union of North America, Const. & Mun. Workers Local Union No. 1253 v. Blackwell,* 482 S.W.2d 327, 329–30 (Tex.Civ.App.—Amarillo 1972, no writ). The county claims that because Navarro maintained his position as the elections

---

1. At oral argument both parties acknowledged the county's impending decision to abolish the county elections administrator position. Nonetheless, the parties agreed that this case is not moot because our decision affects the award of attorney's fees and Navarro's possible entitlement to certain employment benefits.

administrator. At the time of trial, no statute had been violated.

■ The actions of the Elections Commission provided Navarro with a basis to invoke the jurisdiction of the court. A threatened wrong is a sufficient basis for granting injunctive relief, *see Godley v. Duval County,* 361 S.W.2d 629, 630 (Tex.Civ. App.—San Antonio 1962, no writ), and a threatened ouster or threatened claim is sufficient to invoke declaratory judgment proceedings. *Ainsworth v. Oil City Brass Works,* 271 S.W.2d 754, 761–62 (Tex.Civ. App.—Beaumont 1954, no writ). Further, section 37.004 of the Texas Civil Practice and Remedies Code specifically authorizes a suit to construe a statute when an individual's rights, status, or other legal relations are affected by the statute. The facts of the instant case fall squarely within these named categories. Following the Election Commission's unsuccessful attempt to remove Navarro, it passed two motions which bear upon the issue of the trial court's jurisdiction. The first motion reflected the Commission's intent to accept an opinion from the District Attorney stating that the elections administrator holds a public office within the meaning of article XVI, section 30 of the Texas Constitution, and that Navarro, having already served two years, was in a holdover status. The second motion stated that the Commission would solicit applications for Navarro's vacancy. These actions clearly threatened Navarro's position and provided a sufficient basis for injunctive relief and a declaratory judgment. Because we hold the trial court had jurisdiction to hear Navarro's claim, we overrule point of error number one.

### CHARACTERIZATION OF ELECTIONS ADMINISTRATOR

■ The county's second point of error challenges the trial court's determination that an elections administrator is not a public officer. In its third point of error, the county challenges the trial court's determination that the Legislature intended to shield an elections administrator from removal except upon compliance with the safeguards set forth in the Election Code. The county's fifth point of error challenges the trial court's

injunction, which was based on its finding that Navarro was not an officer subject to a two year term of office.

### A. Sovereign Function of Government

In support of its argument that an elections administrator is a public officer, the county relies on *Aldine Independent School District v. Standley,* in which the Texas Supreme Court defined a public officer as one upon whom "[a]ny sovereign function of the government has been conferred . . . to be exercised by him for the benefit of the public largely independent of the control of others." *Aldine Indep. Sch. Dist. v. Standley,* 154 Tex. 547, 280 S.W.2d 578, 583 (1955) (quoting *Dunbar v. Brazoria County,* 224 S.W.2d 738, 740 (Tex.Civ.App.—Galveston 1949, writ ref'd)). In *Aldine* the supreme court held that a tax assessor-collector for a school district was an employee rather than a public officer as defined by the Constitution. In reaching this conclusion the court made the following observation:

> It is claimed by respondent that the assessing and collecting of taxes is a part of the sovereign power of the State. That is correct, but a reading of the statutes relative to the assessment and collection of taxes, as above set forth, shows that this power is lodged by the Legislature and Constitution in the school board, and not in the office of the assessor-collector. He is but an agent or employee of the Board to discharge the clerical duties necessary to carry out the school Board's powers of taxation.

*Id.* In line with *Dunbar,* the county argues the elections administrator performs a sovereign function of the government and therefore the first prong of the *Aldine* definition of "public officer" is met.

Principally, the elections administrator manages voter registration and federal, state, and local elections for a county. Among the duties performed by the elections administrator are: contracting with the governing body of a political subdivision to perform election services, TEX. ELEC.CODE ANN. § 31.093 (Vernon 1986); performing or supervising the performance of duties and functions for a countywide election, TEX. ELEC.CODE ANN.

§ 31.094 (Vernon 1986); and making expenditures from a county treasury fund without budgeting or appropriation by commissioners court. TEX. ELEC. CODE ANN. § 31.100 (Vernon 1986). While these duties may indicate that a county elections administrator performs a sovereign function, these responsibilities are initially vested in the secretary of state as the chief elections officer of the state,[2] the county clerk as the county elections officer,[3] and the county tax assessor-collector as the county voter registrar.[4]

The commissioners court in its discretion may create the position of county elections administrator. TEX. ELEC.CODE ANN. § 31.031(a) (Vernon 1986). If the position is created, then the elections administrator, like the assessor-collector in *Aldine,* is but an agent or employee of the county, retained to discharge the administrative duties necessary to carry out the State and county's responsibilities regarding elections and voter registration. This conclusion is further indicated by the county's authority to abolish the position of elections administrator, while still being charged with the sovereign function of administering elections and voter registration through its clerk and assessor-collector.

### B. Indicia of Public Office

The county further argues that an elections administrator is a public official because the position has the indicia of a public office. To this end, the county lists various "indications" of a public office noting that the elections administrator: has an official seal for use when certifying documents; must reside in the county in which this position is held; cannot hold another office while fulfilling the duties of this position; is politically appointed; may not publicly support a political candidate; must file a bond and take an oath; makes recommendations to commissioners court; and has the ability to contract. The county further notes that the elections officer's position may be created or abolished only upon written order of the Commissioners Court, and the Elections Commission is the only proper authority to receive the elections administrator's resignation. These restrictions and elements of the position, many of which do not apply to other county employees, may be some evidence of the "public office" nature of the elections administrator's position, but they are not dispositive.

The restrictions on political activities, residency requirements, and holding of multiple offices are consistent with the conclusion that the Legislature sought to ensure political neutrality within the administration of elections. *See* Op. Tex. Att'y Gen. No. LO–88–62 (1988) (noting that Election Code provisions attempt to insulate elections administrator from partisan politics). This conclusion is further supported by a review of the 1983 amendments to the Election Code. The amendments eliminated express provisions which had limited the period of office to two years, sporadically substituted the term "position" for the term "office" in describing the elections administrator's job, deleted the requirement that an elections administrator take an official oath, and added a clause providing for termination of the elections administrator at any time for good cause on four-fifths vote by the Elections Commission. *See* TEX. ELEC.CODE ANN. § 31.037 (Vernon 1986).[5]

### C. Independent Exercise of Duties

The second *Aldine* prong requires that the duties of a public officer be exercised for the

---

2. TEX. ELEC.CODE ANN. § 31.001 (Vernon 1986) (secretary of state is state's chief election officer).

3. TEX. ELEC.CODE ANN. § 31.091 (Vernon 1986) (county clerk is county election officer unless elections administrator retained or election duties are transferred to tax assessor-collector).

4. TEX ELEC.CODE ANN. § 12.001 (Vernon 1986) (county tax assessor-collector is voter registrar for county unless position of elections administrator is created or county clerk is designated).

5. The transcript in this appeal also contains a letter from Texas Secretary of State, Antonio D. Garza, Jr. to Eduardo Navarro opining that the 1983 amendments to the Election Code reflect legislative intent to change the nature of the elections administrator from a public officer to a public employee. Although not binding on this court, this letter is instructive. *Cf. New v. Dallas Appraisal Review Bd.,* 734 S.W.2d 712, 714–15 n. 4 (Tex.App.—Dallas 1987, writ denied) (court referencing letter written by General Counsel to State Property Tax Board in determing issue of whether presumption of delivery is irrebuttable).

benefit of the public largely independent of the control of others. Since the purpose of an elections administrator is to oversee the voting process, the position, by its very nature, confers a public benefit. The testimony of Navarro indicates, however, that he was greatly restricted in the exercise of his duties. While an elections administrator generally has authority to contract with political subdivisions and political parties to perform election services under TEX. ELEC.CODE ANN. §§ 31.093—.094 (Vernon 1988), Navarro testified that he needed approval from Commissioners Court on many basic decisions regarding elections. For example, Navarro stated he needed the approval of Commissioners Court for selecting polling places and early voting sites, issuing orders calling for elections, adopting a voting system, selecting election judges and phone bank clerks and establishing their compensation rates, establishing a central counting station, leasing voting equipment and polling facilities, and selecting a supplemental list of election judges and alternates. The evidence presented establishes that the governmental functions performed by Navarro were not exercised "largely independent of the control of others." We conclude that the trial court properly found that Navarro did not hold a public office within the meaning of article XVI, section 30(a) of the Texas Constitution, and that the Legislature intended to shield the position of elections administrator from removal except upon compliance with the statutory safeguards established in the Election Code. Accordingly, the trial court properly issued its injunction. Points of error numbers two, three, and five are overruled.

### ATTORNEY'S FEES

■ In its fourth point of error, the county argues that the trial court erred in awarding attorney's fees because Navarro did not submit his claim to the county prior to filing his suit. As previously discussed, Navarro did not present a claim for monetary damages, thus the presentment requirement specified in the Local Government Code was never triggered. Further, the Uniform Declaratory Judgments Act does not require that a claim first be presented to the county commissioners court before a suit may be initiated. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). Point of error number four is overruled.

The judgment of the trial court is affirmed.